## Case No. 8,225.

LEITENSDORFER v. CAMPBELL et al.

[5 Dill. 419.] [1]

Circuit Court, D. Colorado. 1878.

PATENTS FOR LAND — COURTS WILL NOT RESTRAIN THEIR ISSUE, BUT WILL RELIEVE AGAINST FRAUD PRACTISED TO PROCURE THEM — VIGIL AND ST. VRAIN GRANT — RIGHTS OF DERIVATIVE CLAIMANTS.

1. The courts will not interfere with the land department of the general government by restraining the issue of patents or other evidences of title; the complainant must wait until the land department has acted, and then attack the results of such action in a proper judicial proceeding against the person who has improperly acquired the title from the government.

2. Congress confirmed, with a reduced area, an inchoate Mexican grant (12 Stat. 71), and provided that the original and derivative claimants (15 Stat. 275) should establish their claims to the satisfaction of the register and receiver of the proper land district. It seems that an appeal lies from the decisions of these officers to the commissioner of the general land office, the same as in ordinary cases. It was *held* that a bill which alleges that the land department refused to hear the complainant's appeal, and, instead thereof, had issued patents to the respondent, to the plaintiff's injury, and that the decision of the register and receiver had been procured by bribery practised by the respondent, presented a prima facie case for relief.

3. Rights of the derivative claimants of the Vigil and St. Vrain grant, under the act of June 21st, 1860 (12 Stat. 71), and of February 25th, 1869 (15 Stat. 275), discussed.

A demurrer to the original bill of complaint was sustained by Mr. Justice Miller and Judge Hallett, at the July term, 1877, with leave to file an amended and supplemental

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

bill. Such a bill has been filed, and the defendants severally demur to the same. It is on this demurrer that the cause is now before the court. The amended and supplemental bill is filled with redundant and irrelevant matter, but it states in substance the following facts:

1. December 9th, 1843, Manuel Armijo, governor of New Mexico, granted to Cornelio Vigil and Ceran St. Vrain certain lands (nine hundred and twenty-two square leagues—four million ninety-six thousand three hundred and forty-five acres), then in New Mexico, now in Colorado.

2. March 7th, 1844, Vigil and St. Vrain conveyed one-sixth (undivided) of the same lands to Eugene Leitensdorfer.

3. In the same year (1844) Vigil and St. Vrain conveyed other one-sixths (undivided) to Bent Donaciano, Vigil, and Armijo, making in all four interests, of one-sixth each, so conveyed.

4. December 10th, 1861, Eugene Leitensdorfer conveyed his one-sixth interest to Thomas Leitensdorfer, the complainant.

5. June 21st, 1860, congress confirmed the grant to the extent of eleven leagues for each of the claimants, Vigil and St. Vrain (ninety-seven thousand six hundred and fifty and ninety-six one-hundredths acres in all), saving the rights of those who had acquired title from them (12 Stat. 71).

6. February 25th, 1869, congress amended the act of 1860, and provided that all claimants (the original grantees and those who had title from them) should "establish their claims to the satisfaction of the register and receiver of the proper land district," etc. (15 Stat. 275).

7. That thirty-nine claims were presented to the register and receiver under this act, and among them plaintiff's claim for sixteen thousand acres and [William] Craig's claim for one hundred and twenty-seven thousand acres.

8. That these claims (plaintiff's and defendant Craig's) were not for the same tract, but for separate parcels of the original grant.

9. That plaintiff's claim before the register and receiver was well supported by evidence showing the conveyance to him by Vigil and St. Vrain, and occupancy and improvement of the tract by plaintiff and his grantors.

10. That defendant Craig's claim is junior to plaintiff's, and is founded on a deed from St. Vrain alone, executed long after plaintiff's deed was made; that Craig has no title whatever from Vigil, and if his deed from St. Vrain is good, the prior grants of Vigil and St. Vrain, of which plaintiff's is the first, will absorb all of the twenty-two leagues confirmed by congress, and leave nothing for Craig.

11. That, notwithstanding plaintiff's manifest right, the register and receiver illegally, fraudulently, and corruptly allowed Craig's claim to the extent of seventy-three thousand two hundred and fifty-one and

fifty-five one-hundredths acres, and disallowed plaintiff's claim altogether.

12. That the consideration for the corrupt agreement between the register and receiver and Craig was a conveyance of a portion of the tract allowed to the latter to one Golden, for the use and benefit of the register and receiver.

13. That plaintiff appealed from the decision of the register and receiver (5 Stat. 107), but was defeated in having the appeal heard, by the president directing the commissioner of the general land office to issue the plat to Craig. The appeal was never heard, and the commissioner of the land office refuses to hear it.

14. That the plat has accordingly been issued to Craig. (The statute makes the plat evidence of title. 15 Stat. § 3, p. 277.)

The plaintiff in his bill says nothing about the other derivative claimants whose claims were wholly or partially allowed. He does not allege that any of these claimants obtained more or less than they were entitled to. He does state in his bill that the "questions arising in this action are of great and general interest to all of said derivative claimants," and that it is inconvenient or impossible to bring them all before this court. No relief is sought in the bill against the other derivative claimants; the only defendants to the bill are Craig and [William L.] Campbell, the surveyor-general of Colorado. The prayer of the bill is that the approved plats of the derivative claim of Craig, signed by defendant Campbell, May 26th, 1877, be decreed void from the beginning and cancelled, or that Craig be decreed to hold the land in trust for the plaintiff and the other derivative claimants, and for all other general and special relief applicable to the case.

J. O. Shackelford, R. H. Bradford, and John Q. A. King, for complainant.

G. G. Symes, for defendants.

Before DILLON, Circuit Judge, and HALLETT, District Judge.

DILLON, Circuit Judge. In sustaining the demurrer of the defendant Craig to the original bill, Mr. Justice Miller distinctly and expressly held that the complainant had no right, and could have none, to restrain the issue of "approved plats," which are made "evidence of title," and that in no event could he have any relief in this court against the defendant Craig until such plats were actually issued and delivered to him. Since that time such plats have been issued and delivered; and the amended and supplemental bill (to which the present demurrer relates) differs mainly from the original bill in that it avers this fact, and also that the supreme court of the District of Columbia has refused to issue a writ of mandamus, at the relation of the complainant, to the commissioner of the general land office, to compel that officer to hear the appeal taken by the complainant from the action of the register and receiver in allowing the claim of the defendant Craig, and in wholly rejecting the claim of the complainant.

As at present advised, we should be of the opinion that the complainant had the right to appeal from the decision of the register and receiver in rejecting his claim, and also from their decision establishing the claim of Craig, so far as the latter would interfere with the rights of the complainant as they might finally be established. But his appeal, and that of the other derivative claimants who appealed, were never heard by the commissioner of the general land office, or by the secretary of the interior, in consequence of the action of the president, based upon what we are inclined to regard as the erroneous opinion of the attorney-general, of May 15th, 1876, that the decision of the register and receiver was final in such a sense that no appeal would lie therefrom to the commissioner of the land office, and that the secretary of the interior had no jurisdiction to review the decision of the register and receiver.

Without any hearing or decision of the pending appeals, "approved plats" (equivalent, in legal effect, to an ordinary patent as evidence of title) have, nevertheless, been issued to the defendant. While these approved plats remain in force, it is out of the power of the commissioner of the land office or the secretary of the interior to hear and determine the appeals, for if they should decide for the plaintiff, and also decide against the defendant, these decisions would be without any legal value or effect, since the title has, as respects the land awarded and platted to Craig, passed from the government to him. With the delivery of these plats to Craig, the legal title to the land described in them passed to him, and with it passed all control of the executive department over the title. Moore v. Robbins, 96 U. S. 530. For this reason, the commissioner of the land office refuses, as alleged, to hear the appeal, or to take any further action in the matter, thereby remitting the complainant to the courts for redress or relief.

Although the specific land claimed by the plaintiff does not conflict on the ground with that awarded to Craig, since the tracts are many miles apart, yet, on the facts as stated in the bill of complaint, the issue of "approved plats" to Craig does injure the plaintiff, assuming that he is entitled, or shall be found entitled, to the sixteen thousand acres claimed by him. The reason is this: All of the derivative claimants can have no more, in the aggregate, than the ninety-seven thousand six hundred and fifty and ninety-six one-hundredths acres confirmed by the act of 1860. The register and receiver rejected the claims of the plaintiff and twenty-two others, amounting to eighty-five thousand nine hundred and thirty-nine and thirty-two one-hundredths acres. They allowed thirteen claims; and to these successful claimants, including

Craig, they awarded ninety-seven thousand six hundred and fourteen and fifty-three one-hundredths acres—substantially all the amount confirmed. To Craig was given seventy-three thousand two hundred and fifty-one and fifty-five one-hundredths acres. If Craig's plats of the title stand, and particularly if plats are delivered to the other successful claimants—if this has not already been done—then, if the plaintiff should hereafter be found entitled to his land, he cannot get it, for the grant, as confirmed, is already exhausted.

Under the act of June 21st, 1860, as amended February 25th, 1869, the validity and extent of the claims of Vigil and St. Vrain, and all of the derivative claimants, were matters which it was contemplated and provided should be decided by the executive instead of the judicial department of the government. U. S. v. Flint [Case No. 15,121]; Foster v. Neilson, 2 Pet. [27 U. S.] 314. This view finds support in the consideration that the execution of treaty provisions is for the political, and not the judicial, branch of the government, unless otherwise expressly provided, and in the further consideration that the above-mentioned acts of 1860 and 1869 prescribe no rules by which the conflicting rights and equities of the derivative claimants shall be settled; and as there is not, or may not be, enough land (in consequence of the great reduction in the confirmation of the grant) to satisfy the claims of all, it must have been contemplated that their several rights and equities should be determined by the merits of their respective claims, including the extent of actual occupation and value of improvements as primary elements, rather than the mere date of the grants or promises to settle made by Vigil and St. Vrain, under the assumption that they owned nine hundred and twenty-two square leagues, instead of twenty two square leagues, as diminished by the act of June 21st, 1860.

The amount of land claimed by all the derivative claimants greatly exceeded the whole area confirmed. There is not enough for all, and the reasonable inference would seem to be that congress intended to place bona fide derivative claimants having actual settlements upon an equal footing, irrespective of the date of their several titles or promises to settle, and that the extent to which they should severally be entitled to receive lands (not exceeding, in the aggregate, the amount of the confirmed area) should be decided by the land department of the government. Such decision must, in the very nature of the peculiar circumstances of the case, rest upon special facts and equities appertaining to the several claimants, which the executive branch of the government could as well determine as any one else, and not upon pure or strict principles of law, which could be more appropriately determined by the judicial than by the executive department.

If this is a sound conclusion, it results that the rights of the claimants must be determined by the executive department, and not by the courts; and that the courts can only interfere, if at all, in the results of executive action when such results have been procured by fraud or corruption, or possibly, by a denial of some plain legal right.

It is alleged in the bill that Craig corruptly influenced the decision of the register and receiver in his favor by conveying to a third person, for their use and benefit, twenty-two thousand five hundred acres of the land embraced in their decision. If this is true, a decision thus procured cannot be the basis of any rights which can injuriously affect the plaintiff; and approved plats of title to land upon such a decision have no validity as respects any person injured thereby, and who seeks to avoid them by judicial action.

Mr. Justice Miller decided, at the last July term, that, although such fraud and corruption were practised, it did not warrant the courts in interfering with the action of the officers of the executive department by restraining the delivery of plats, and that the plaintiff must wait for relief until the plats were delivered and the executive department had exhausted its power and its right to act.

Although the point, in view of the anomalous and peculiar nature of the case, is by no means free from doubt, our present opinion (subject to review hereafter) is, that it is not a necessary or fair deduction, from what was then decided, that the courts cannot set aside such plats if it shall be judicially established that they were based upon a decision of the register and receiver procured by fraud and corruption—and this, although this court may not have the power to make any decree or order which the officers at the land department will be bound to obey or respect, and although we may not have the right to withdraw the controversy, on its merits, as between the plaintiff and the defendant, or between all the derivative claimants, from the arena of the executive department into the arena of the courts. The supreme court of the United States, while firmly holding to the principle that the courts could not interfere with and control the officers of the land department in the exercise of their duties, has frequently decided that the courts could correct the result of such action whenever it invaded private rights. This is declared with great emphasis in Johnson v. Towsley, 13 Wall. [80 U. S.] 84. It was reaffirmed at the last term, in Moore v. Robbins, 96 U. S. 530, and is thus stated by Mr. Justice Miller: "The decision of the officers of the land department, made within the scope of their authority, on questions of this kind, is in general conclusive everywhere, except when reconsidered by way of appeal within that department; and that, as to the facts on which their decision is based, in the absence of fraud or mistake, that decision is conclusive, even in courts of justice, when the title afterward comes in question; but that in this

class of cases, as in all others, there exists in the courts of equity the jurisdiction to correct mistakes, to relieve against frauds and impositions, and, in cases where it is clear that those officers have, by a mistake of the law, given to one man the land which, on the undisputed facts. belonged to another, to give appropriate relief."

In the recent case of Shepley v. Cowan, 91 U. S. 340, the doctrine is thus aptly stated by Mr. Justice Field: "The officers of the land department are specially designated by law to receive, consider, and pass upon proofs presented with reference to settlements upon the public lands, with a view to secure the right of pre-emption. If they err in the construction of the law applicable to any case, or if fraud is practised upon them, or they themselves are chargeable with fraudulent practices, their rulings may be reviewed and annulled by the courts when a controversy arises between private parties founded upon their decisions; but, for mere errors of judgment upon the weight of evidence in a contested case before them, the only remedy is by appeal from one officer to another of the department."

If the alleged bribery is established, and if the approved plats are set aside, and we can go no further, the executive department will again be free to act, and to hear and decide the appeals; and its officers may, perhaps, by mandamus from the proper tribunal, be compelled to act on the appeal, although their judgment cannot be judicially controlled.

We concur in holding that the bill, as amended, may be sustained, on the ground that it is alleged that the decision of the register and receiver was procured by the defendant by fraud, that the title of the defendant rests on that decision, and that, in consequence of it and the issue of the plats, the executive department has disabled itself from hearing the appeals and discharging the duties imposed on it by law. The demurrer admits the facts stated in the bill, and if we should hold differently, the plaintiff would be remediless, and justice might fail.

The case, in many of its aspects, is wholly without a precedent, and on some of the points involved we have had, and still have, grave doubts, and our judgment in relation to them is by no means irreversibly settled. When the proofs come in, we shall be willing to hear further arguments concerning any of the views presented, and as to the extent to which, if at all, the plaintiff will be entitled to relief if the alleged bribery and corruption shall be proved.

If such bribery be established, it will then become a question whether we shall wholly set aside the plats, so as to remove the obstacles to executive action, or whether, having taken jurisdiction for one purpose, we can proceed to give complete relief, and to that end set aside the plats only so far as may be necessary to secure the plaintiff the land to which he may show himself entitled. This may depend as well upon the frame of the bill as upon the power of the court.

The defendant Campbell is improperly made a defendant, and his demurrer is sustained. The demurrer of the defendant Craig is overruled, with leave to answer.

Ordered accordingly.

[NOTE. In October, 1878, William Craig filed his answer to the amended bill. Replication was filed to this answer; issue was joined; and proof taken, consisting of documentary evidence and the testimony of witnesses. In January, 1879, the plaintiff dismissed the bill and the amended bill, so far as by the prayers thereof it was sought to hold Craig liable as trustee for the complainant of the titles of the land conveyed to him by the patent issued by the United States to Craig on January 8, 1878. Upon final hearing of the case, a decree was entered July, 1880, by which it was "ordered, adjudged, and decreed that the decision or award of the register and receiver of the land, described in the bill and pleadings, of date the 23d of February, 1874, in favor of the defendant William Craig, is fraudulent and void; and it is further ordered, adjudged, and decreed that the patent for the said lands issued to defendant William Craig on the 8th day of January, 1878, be, and it is hereby, declared and decreed to be null and void, and that the approved plat or plats delivered to defendant William Craig, as evidence of title to the land described in the bill, by William Campbell, surveyor general, be, and the same are hereby, declared and decreed to be null and void." From this decree the defendant appealed to the supreme court, pending which appeal both parties died, and the cause was revived in the names of their respective personal representatives. Mr. Justice Matthews delivered the opinion, in which he says: "The injury which the complainant alleges is that Craig wrongfully obtained from the register and receiver an award of lands to which he had no rightful claim, whereby the whole quantity of the confirmed grant has been reduced and absorbed so as to exclude the complainant from that share to which he was entitled." Continuing, the learned justice observed: "The charge is that Craig bribed the register and receiver to make the award which they did in his favor. It may, nevertheless, be true that the award ought so to have been made upon the merits. So the register and receiver may have been right in rejecting the claim of Leitensdorfer. This possibility is tacitly admitted. for the bill does not ask a declaration and decree that Craig has no valid claim, nor a decree establishing the claim of Leitensdorfer; and it is plainly not within the jurisdiction of the circuit court to grant any such relief, even if it were asked." Continuing, the learned justice observed that the decree does not remove any obstacles which have been wrongfully and unjustly opposed by the defendant to the prosecution in another forum of the rights which the complainant seeks to recover. The right of appeal, he holds, should have been from the register to the commissioner of the general land office, if it existed in any case. This right is not "hindered by the fraudulent character of the decision appealed from, and the appeal itself is the mode pointed out by law for the correction of any error that may be shown in the decision complained of. whether that error has been produced by the practice of fraud and corruption, or was merely an honest mistake." The fact that complainant "did not appeal from that judgment. because he was advised by counsel that no appeal would lie from such judgment, * * * is not sufficient to confer jurisdiction upon a court of equity." The decree of the circuit court was consequently reversed. 123 U. S. 189, 8 Sup. Ct. 85. The case was again heard by the supreme court upon the question of the payments of costs by certain interveners. 127 U. S. 764, 8 Sup. Ct. 1393.]